McIlvaine, J.
On the trial in the court of common pleas, for the purpose of showing negligence on the 'part of defendant in constructing the new channel or outlet for the creek, it was shown that the old channel was one hundred feet wide, and that the new, as constructed by the defendant, was only fifty feet in width; that the bed of the creek for several miles from its mouth was through sand and gravel as well as clay and rock; that the new channel through the action of the current was extended in width to one hundred and fifty feet; that the bar formed below the new mouth covered about three and one-fourth acres, and caused the current of the river to flow to the east side of the river bed, and that, in consequence, the east bank of the river and the levee thereon, has been undermined and washed away, whereby, the plaintiff’s crops were overflowed and damaged.
On the other side, evidence was given to show that, by the action of the creek at its old mouth, where the bed of the river was only three hundred feet in width, a bar was formed in the river, at the west side, and extended to the middle of the river bed; that the river bed rapidly increased in width below the old mouth so that at the new mouth of the creek, and below, it was four hundred and fifty feet in width; that a short distance above the old mouth of the creek, the bed of the river, on the west side, had been encroached upon by debris from a stone quarry there situate; that ever since the river had been hemmed in by the railroad embankments on the west, and the levee on the east, its banks had been subject to washings and inundations; that in 1866, the levee on the east bank had been broken by a flood of about the same flow as that of 1875 ; that by the same flood, in 1875, the levee on the lands of Thornton was washed away, at a point far above the influence of the bar at the new mouth of the creek; that previous to the flood of 1875, the levees on the east bank of the river, on the lands of Henderson *452 had been suffered to get and remain out of repair; that by this flood, property on each side of the river was destroyed.
What interest, if any, the plaintiff or his lessors had in the levee above the line of their lands, or what damage would have been done to the plaintiff’s crops from back-water, if the levees had not been broken, were questions upon which the testimony was exceedingly unsatisfactory.
Without passing upon the weight of the testimony, we think the verdict in favor of the plaintiff, upon the state of facts above indicated, should not be allowed to stand, if any error or misleading direction be found in the instructions given to the jury, in respect to the legal responsibility of defendant.
Among other things, the court charged the jury as follows:
“ I say to you, that the defendant, in 1868, had the right to change the channel of Elk creek on its own land by digging a new channel and filling up the old channel, and to cause the water in the creek to flow through the new channel and empty out of it into the Miami river at a point different from where it naturally emptied into the same, if by so doing it did not injure the property of others ; but if by so doing it did injure the property of others, directly and immediately, or if it caused damage to be done to the property of others by maintaining the new channel after the change, and by causing the water of Elk creek to flow through the same, it became liable for the damage so done to persons whose property was so injured, notwithstanding it made the change in the channel skillfully and prudently, and the change greatly aided it in maintaining and protecting its railroad tracks; and its bridge across Elk creek could not be maintained across the old channel of Elk creek without great difficulty and expense.
“ Hence, if you find from the testimony in this case that the defendant by changing the channel of Elk creek in 1868, and turning the water thereof through the new channel, or by maintaining the new channel afterwards, and by causing the water of the creek to flow through the same, within four years next prior to the commencement of this suit, and prior to the injury complained of in the petition, it did cause damage to be done to the crops of the plaintiff in the manner stated in the *453 petition, it will be your duty to render a verdict in favor of the plaintiff and against the defendant for the damage so done, unless you find that the plaintiff or his lessors immediately and directly contributed to the said damage by failing to take ordinary care, such care as an ordinary careful and prudent man under the same circumstances would have taken to protect his crops, and the land upon which they were raised, from said overflow and damage.”
By this charge, the liability of the defendant was not made to depend upon its failure to exercise any degree of care, prudence and foresight whatever; but was absolute, if the injury resulted from the change in the channel of the creek immediately or remotely. The theory of the case thus put to the jury was: the change in the channel of the creek caused the sand-bar in the river; the sand-bar changed the current of the water in the river; the change in the current weakened the levee on the opposite bank; then the flood, an irresponsible agent, intervened and broke down the weakened embankment and overflowed the plaintiff’s crops; and thus the defendant was held liable, excluding from the jury any inquiry into the fact, whether or not, by the exercise of reasonable and prudent foresight, such an injury might have been anticipated as a result from the original cause; namely, the change in the creek bed.
An actionable nuisance is defined by Mr. Cooley in his work on Torts, to be anything wrongfully done or permitted which injures or annoys another in the enjoyment of his legal rights; and, on page 566, he says: “As the definition assumes the existence of wrong, those things which may be annoying and damaging, but for which no one is in fault, are not to be deemed nuisances, though all the ordinary consequences of nuisances may flow from them.” And Mr. Addison, in his work on Torts (Dudley and Baylies’ ed. p. 3), says, “A man may, however, sustain grievous damage at the hands of another ; and yet, if it be the result of inevitable accident or a lawful act done in a lawful manner, without any carelessness or negligence, there is no legal injury, and no tort giving rise to an action for damages.” Such cases are within the rule of damnum sine injuria.
*454 The question, therefore, arises, when is a person to be considered at fault, for changing the bed of a stream upon his own lands and for his own protection, where such change results in damage to another person?
In a recent case, some what analogous to the present (Law Reports, Appeal Cases, vol. 2, page 781), Fletcher v. Smith, where Fletcher, et al. had changed the course of a stream of water on their own lands, for their own convenience, in such a manner, that the new banks were overflowed by a flood, and the water passed into the mines of Smith to his damage, Lord Penzance, in delivering his opinion to the House of Lords, put these questions, as to the obligations of defendants, in diverting the stream — First, “Was it enough to make the new and artificial watercourse as efficient, but no more so, than the old and natural one, so that whatever defects, incapacity or otherwise, the old had, might, without responsibility, be reproduced in the new one ?
“ Or, secondly, were they bound (as they, for their own convenience, were making a new and artificial watercourse) to construct it in such a manner, that it would be capable of conveying off the water that might flow into it from all such floods and rainfalls as might reasonably be anticipated to happen in that locality ?
“ Or, thirdly, were they bound to make provision for any such quantities of water as might possibly be discharged into it from any mere rainfall, however heavy, however unusual, and however contrary to all previous experience ?”
Lord Penzance was .inclined to the second proposition as the measure of the defendants’ obligations. We are of the same opinion upon the facts of that case. The third proposition requires provision to be made against a state of things, which human foresight could not anticipate, and is, therefore, unreasonable. The first omits that degree of care which ordinary prudence would require.
The principle of the second proposition, above stated, applied to this case, would have forbidden the change in the channel of the creek, if common prudence would have anticipated increased danger to the opposite proprietors; but if, in *455 the exercise of á sound and prudent judgment, no increased danger could have been anticipated, and the work was skillfully and prudently performed, the defendant below was without fault.
The difference between the case of Fletcher v. Smith, and the present, is this: in the former, increased care and skill would have enlarged and strengthened the banks of the new watercourse, so as to have prevented its insufficiency in case of any flood that could have been reasonably anticipated; but in the present, no human skill or labor could have prevented the formation of a bar at the new mouth of the creek. The question in this ease then lies back of the manner in which the new channel was constructed, and, we think it is the main question in the ease, namely: Was the railroad company at fault in undertaking to change the channel ?
And this is the test of that question. From all the known circumstances, would a person of ordinary prudence have anticipated increased danger to the banks on the opposite side of the river therefrom, in care of unusual, but not unprecedented, floods % If not, and reasonable care was exercised in the construction of the new channel, any damage resulting from the formation of the bar at the new mouth of the stream, is dam-mom sine injuria.
Judgment reversed and cause remanded..